IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BROOKE KALE BURKMIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 22-00346-JB-M |
| | ) |
| THE MONEY SOURCE, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant, The Money Source, Inc.'s Motion for Summary Judgment. (Doc. 59). The Motion has been fully briefed, and it is ripe for resolution. For the reasons stated herein, the Court concludes the Motion is due to be **DENIED**.

**I.    BACKGROUND FACTS**

The facts of this case, taken in a light most favorable to Plaintiff, are as follows. Plaintiff, Brooke Kale Burkmier, executed a promissory note securing a loan of $85,714.00 from Trust Company Bank, on November 25, 2014 ("Loan"). The loan proceeds were applied to Plaintiff's purchase of real property at 5401 Helen Drive, Theodore, Alabama 36582. Plaintiff granted a mortgage on the property to Mortgage Electronic Registration. Plaintiff's Loan was subsequently sold to Defendant. Defendant remains the owner of the Loan.

An escrow account was established for the Loan for payment of, *inter alia*, taxes, property insurance, and mortgage insurance. Plaintiff's initial combined monthly Loan payment was $593.12, including principal, interest, and escrow amounts.

1

It is undisputed that Plaintiff was behind in making her mortgage payments in 2019. Defendant and Plaintiff entered into an agreement under which Plaintiff was to bring her loan current, making payments in the amount of $230.17, $930.17, and $930.18 for the months of November 2019, December 2019, and January 2020, respectively. Plaintiff made the first two of these payments. The parties dispute whether Plaintiff made the third. Plaintiff began calculating an amount she believed was due on her Loan and making monthly payments based on her calculations, rather than monthly statements from Defendant.

As of March 2020, Defendant determined the Loan had an escrow shortage in the amount of $362.72. Plaintiff did not pay this shortage as a lump sum, and Defendant calculated an increased monthly escrow and Loan payment in the total amount of $635.12.

The focus of the parties' dispute concerns Plaintiff's procurement and cancellation of various homeowner insurance policies. Plaintiff initially obtained a homeowner's insurance policy from Allstate Insurance Company (the "Allstate Policy"), which Plaintiff understood did not include wind coverage. In December 2020, Defendant disbursed a premium payment for the Allstate Policy in the amount of $1,009.27, for the January 30, 2021 through January 30, 2022 policy period.

In 2021, Plaintiff began shopping for homeowner's insurance that included wind coverage, with the intent to replace the Allstate Policy. Plaintiff contacted State Farm Insurance Company in February 2021, where she had an existing automobile policy. She inquired about bundling homeowner's and wind coverage with her State Farm automobile policy. State Farm issued a homeowner's insurance policy for the subject property, effective March 31, 2021 (the "State Farm Policy"), with an annual premium of approximately $2,342. Defendant received

evidence of the State Farm Policy on March 31, 2021, and paid the State Farm Policy premium policy premium.[1]

At some point, Plaintiff decided to cancel the State Farm Policy, and on April 7, 2021, Allstate sent State Farm a flat cancellation request. State Farm sent Plaintiff confirmation of cancelation, effective April 14, 2021, and issued a premium refund. Plaintiff did not provide notice of the State Farm Policy cancellation to Defendant.

Plaintiff also applied to Alabama Insurance Underwriters Association ("AIUA") for separate wind coverage. Defendant distributed $1,078 to AIUA on or about April 9, 2021.

On or about April 30, 2021, Defendant received a State Farm premium refund. Defendant did not, though, receive a cancellation notice from State Farm.

As of May 25, 2021, Defendant's escrow disclosure statement reflected disbursements for the Allstate Policy, the State Farm Policy, and the AIUA Policy, as well as the refund received for the State Farm Policy. This escrow disclosure statement also reflected a projection for the next year for the State Farm and the AIUA Policies. Based on this projection, with higher annual premiums for the State Farm and AIUA Policies as compared to the Allstate Policy, Defendant's escrow analysis indicated an anticipated escrow shortage for 2022. Defendant calculated an increase in Plaintiff's monthly Loan payment from $635.12, for the previous prior escrow period, to $899.69 in June 2021. Plaintiff disputes this increased amount, contending it was caused by two State Farm Premium payments which had been refunded. Plaintiff's contention of two

---

[1] As explained in detail below, the parties dispute whether Defendant made one or two disbursements to State Farm.

premium payments and refunds is confirmed in Defendant's response, although Defendant now contends only one payment was made.

On or about March 1, 2022, Defendant contends it received notice that Plaintiff had reinstated the original Allstate Policy, and that Allstate advised the annual premium had been paid and that no further distributions were needed. Defendant contends it then conducted a manual verification process for the State Farm and the Allstate Policies and determined the Allstate Policy was active and the State Farm Policy had been cancelled. Defendant updated the Allstate Policy as the operative homeowner's insurance policy, effective March 22, 2022. In June 2021, Defendant was notified that the AIUA Policy was cancelled.

On or about January 21, 2022, Defendant conducted a new escrow analysis. Defendant forecasted decreased escrow amounts for the coming year, as the Allstate Policy premium was less than the State Farm premium and the AIUA Policy had been cancelled. The January 2022 escrow analysis projected an escrow surplus, with a resulting decreased monthly payment of $714.14, effective April 1, 2022.

On April 19, 2022, Plaintiff mailed a letter to Defendant, which for purposes of this Motion is deemed the operative "notice of error" ("NOE").[2] The text of the NOE is as follows:

> I am writing to contest the following foreclosure proceedings that have been suspended pending response and findings regarding the below issues. Please see included letter previously dated 3/29/2022 regarding these issues. Please see below.
>
> 1.      Update correct insurance policy to ALLSTATE - NOT STATE FARM
> 2.      Credit for State Farm Policy payment credited back to the Money Source Inc. charged to monthly Mortgage payment. Payment cleared! (See attached cleared check)

---

[2] Plaintiff sent an earlier letter, dated March 29, 2022. However, the parties agree that Plaintiff mailed the March 29, 2022 letter to an incorrect address, and that the April 19, 2022 letter is the operative NOE.

4

> 3.   Mortgage payment NEEDS TO CORRECTED for current and previous months from June 2020-April 2022.
> 4.   Update fees associated with incorrect monthly payment due to incorrect insurance policy and escrow balances.
> 5.   Credit applied for late fees.
> 6.   Credit for overpayments to principal balance from April 2021-April 2022.
> 7.   Correct credit report for nonpayment and or late fees noted to credit report.
> 8.   Update Allstate Insured Value to reflect policy insured total.
> 9.   Update/adjust monthly payment from June 2022 to reflect $714 as previously advised not $804.00.
> 10.  BOTTOM LJNE - RETIFY ALL ISSUES THAT OCCURRED WlTH ESCROW /MONTHLY PAYMENTS/PRICIBLE BALANCES/INTEREST PAID/PAYMENT CREDJTS/LATE FEES/ANY AND ALL ISSUES RELATED AS A RESULT FROM MY POLICY INFORMATION NOT BEING UPDATED AS NOTED AND ADVISED.
> 11.  REMOVE LOAN FROM FORECLOSURE!
>
> Please let me know if there are any issues with this response. I am writing to keep my home. Please advise in not reversed, so legal counsel can be acquired to prevent foreclosure.

(Doc. 60-1 at PageID.466). Defendant received the NOE on April 21, 2022, and sent Plaintiff a letter the next day, April 22, acknowledging receipt.

On June 1, 2022, Defendant sent Plaintiff a written response to the NOE, stating:

> The Money Source, Inc (TMS) received your correspondence regarding the above-mentioned account disputing the credit reporting and referral to foreclosure.
>
> Thank you for contacting us regarding this matter. We have thoroughly reviewed your loan and determined that the loan was referred for Foreclosure on March 11, 2022. The mortgage is due for November 1, 2021. You have been sent a reinstatement letter which reflects the amount required to reinstate the loan. Records also reflect that on May 24,2022 you were put on a forbear nee plan that will expire on September 1, 2022. The foreclosure was suspended on May 18, 2022 while the loan is on a forbearance plan.
>
> Please be advised that the homeowner's insurance provider listed on the loan is Allstate Insurance Company. The disbursements sent to State Farm Insurance Company on April 2, 2021 and April 6, 2.021 were refunded to TMS on April 8, 2021 and April 30, 2021. Escrow fees cannot be applied to

5

> monthly payments as there must be a separate accounting for all escrow funds. Enclosed with this response is the account payment history which includes payments, corporate advance fees, and escrow disbursements. Please review the account payment history and the application of monthly payments, and late fees. Enclosed please also find the forbearance letter, he breach letter, the foreclosure letter, the reinstatement letter, and the escrow analysis statement for 2020 through 2022.
>
> Your most current escrow analysis reflects an increase in the monthly payment due to wind insurance being added
>
> TMS is required to report accurately to the credit reporting bureaus You credit reporting has been reviewed and TMS confirmed that your credit reporting history and is accurate based on the payment history. Therefore, no corrections will be requested for your credit reporting.
>
> At TMS, we strive to exceed our customer's expectations with every interaction. If you have any questi0hS or need further information regarding this complaint, please contact the TMS Customer Care Center at 1-866-867-0330 from 8 am to 9 pm ET, Monday through Friday, and Saturday 8 am to 12 pm ET, excluding major holidays, or by email at ccare@themoneysource.com.

(Doc. 601 at PageID.515).

## II.   STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The moving party bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving

party is entitled to summary judgment." Id. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### III. ANALYSIS

Plaintiff asserts two (2) causes of action. Count I is brought under the Real Estate Settlement Procedures Act ("RESPA"), specifically 12 U.S.C. § 2605(e) and 12 C.F.R. § 1204.35. (Doc. 15). Count II is brought under Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. (*Id.*). Defendant moves for summary judgment as to both Counts. The Court analyzes each in turn.

### A. RESPA

RESPA's implementing regulations ("Reg. X") explain the obligations Defendant had upon its receipt of Plaintiff's April 19, 2022 notice of error ("NOE"). A servicer has alternative obligations:

[A] servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

7

>    (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i). In *Renfroe v. Nationstar Mortg., LLC,* the Eleventh Circuit summarized these alternative RESPA obligations for responding to notices of error, as follows: "Basically, a servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower." 822 F.3d 1241, 1244 - 46 (11th Cir. 2016). Defendant contends that it satisfied the latter alternative obligation, *i.e.*, that it conducted an investigation, concluded that there was no error, and sent Plaintiff a letter explaining its conclusion.

Plaintiff does not allege Defendant failed to investigate or respond to her NOE. Plaintiff rather claims Defendant did not conduct a reasonable investigation. Specifically, Plaintiff alleges Defendant is liable under RESPA because it "failed to conduct any **reasonable** investigation [of her NOE] and it failed to make any appropriate correction to [her] account[.]". (Doc. 1 (emphasis added)). Plaintiff also disputes the conclusions Defendant reached after failing to reasonably investigate.

The parties spend considerable energy parsing whether RESPA imposes an obligation to conduct a "reasonable" investigation of notices of error. It is true, as Defendant notes, that the term "reasonable" does not appear in the subject provisions of RESPA (12 U.S.C. § 2605(e)).

However, "reasonable" does appear in the implementing regulations (12 C.F.R. § 1024.35(e)(1)(i)) (requiring that the service respond by, *inter alia*, "[c]onducting a reasonable investigation")). In at least one opinion, the Eleventh Circuit included "reasonableness" in its treatment of a servicer's obligation to investigate. *Finster v. U.S. Bank Nat'l Ass'n*, 723 F. App'x 877, 880 (11th Cir. 2018) ("a servicer must either correct the error identified by the borrower or, after conducting a reasonable investigation, respond in writing with an explanation of why it found no error and the information it relied on."). *See also, Diehl v. Money Source, Inc.*, 2018 U.S. Dist. LEXIS 99567 (S.D. Ala. June 13, 2018) (RESPA mandates a "reasonable investigation" (quoting 12 U.S.C. § 2605(e)(1)(i)).

The Court finds the parties' framing of their dispute of "reasonableness" to be a distraction, due in large part to Plaintiff's mischaracterization of Defendant's argument. According to Plaintiff, Defendant "argues that it was only required to perform **some** investigation, **no matter how cursory or unreasonable**, and provide **some** written response, **no matter how complete or accurate**." (Doc. 66 at PageID.667 (emphasis added)). The Court does not find Defendant's argument to be so thoroughly devoid of standard.

Putting these distracting arguments aside, the substance of the RESPA obligation to respond to notices of error has been clearly articulated by courts in this Circuit. The parties have identified relevant cases. *See Renfroe*, 822 F.3d 1241, 1244 - 46 (a servicer may respond . . . by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower."), *Finster* 723 F. App'x at 880 (a servicer may, "after conducting a reasonable investigation, respond in writing with an explanation of why it found no error and the information it relied on."), *Diehl v. Money Source, Inc.,* 2018 U.S. Dist. LEXIS 99567 (S.D. Ala. June

9

13, 2018) (quoting *Renfroe, supra*)   *Whittaker v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 151087 (M.D. Fla. Oct. 23, 2014) ("The statute does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons.") (citing *Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1135 (11th Cir. 2014)). Courts in other circuits are in accord. *See Blair v. PNC Bank, N.A.*, 2022 WL 2986868, at *6 (S.D. Ohio July 28, 2022) ("inquiry need not be more complicated than looking at the mortgage servicer's response and seeing if it fits the express terms of Regulation X in responding to errors alleged in Plaintiff's NOE.") (internal citations omitted); *Boedicker v. Rushmore Loan Mgmt. Servs., LLC*, 2018 WL 828039, at *3 (D. Kan. Feb. 12, 2018) (entering summary judgment in favor of the servicer where "the uncontroverted facts show [the servicer] complied with [Regulation X] by timely responding to plaintiffs' questions and providing the explanation and documentation requested.").

Undisputed evidence in the record establishes that Defendant timely acknowledged and responded to Plaintiff's NOE. Defendant's response addressed the operative Allstate Policy, State Farm premium disbursements and refunds, and adjustments for resulting fees and overpayments. (Doc. 60-1 at PageID.515). Addressing State Farm, Defendant's written response advised Plaintiff that it made two disbursements, on April 2, 2021 and April 6, 2021, and that they were refunded on April 8, 2021 and April 30, 2021. Defendant explained that "[e]scrow fees cannot be applied to monthly payments as there must be separate accounting for all escrow funds." (*Id.*). Defendant's response also provided an account payment history which documented "payments, corporate advance fees, and escrow disbursements." (*Id.*). Defendant's

10

response included escrow analysis statements for 2020 through 2022, and stated that an increase in monthly payment was due to an addition of wind coverage. (*Id.*).

Now, Defendant takes the position that it did not make two disbursements to State Farm, as stated in its response to the NOE. Defendant contends it discovered that, although the May 2021 escrow disclosure statement reflected two State Farm disbursements, "State Farm was not paid twice for the State Farm Policy. Instead, the initial disbursement was part of a bulk payment to State Farm that was stopped due to a technical issue with an unrelated mortgage loan and credited back to Plaintiff's Loan account. As a result of the stoppage on the bulk payment to State Farm, [Defendant] had to initiate a separate, individual disbursement on behalf of Plaintiff on April 6, 2021. Thus, State Farm received only one disbursement of $2,342 from [Defendant] for the State Farm Policy." (Doc. 60 at PageID.362, n.7). Defendant did not provide this explanation to Plaintiff in its response letter. In fact, it is contrary to the response letter.

The Court concludes that a jury may reasonably conclude that a "reasonable investigation" of the NOE at the time would have yielded this conclusion, which in turn should have been included and explained in Defendant's written response. Whether there were one or two State Farm disbursements and refunds, how the same were applied and credited in escrow analysis, and the effect on payments and fees, are central questions here and will be submitted to a jury.

Furthermore, there are factual disputes that are material to how and when Defendant received notice of the State Farm cancellation. Plaintiff argues Defendant's Motion for Summary Judgment "hinges on its assertion that it was not notified that the State Farm policy had been cancelled." According to Plaintiff, that assertion is refuted by (1) a recorded telephone

11

conversation between an employee of Defendant and an Allstate agent, (2) Defendant's receipt of premium State Farm premium refund, and (3) Defendant knew of the cancellation by the time it received Plaintiff's NOE. Defendant argues that neither the telephone conversation nor its receipt of premium refunds constitutes notice. Rather, according to Defendant, it did not have notice of the State Farm cancellation until it conducted a manual verification process when it received an Allstate policy renewal for the 2022 – 2023 policy term.

For the reasons stated herein and in Plaintiff's brief, and upon review of Defendant's written response compared to the issues raised Plaintiff's NOE, the Court concludes there are material factual questions as to whether Defendant conducted a reasonable investigation of the NOE. Defendant's Motion as to Plaintiff's RESPA claim is due to be DENIED.[3]

**B. FCRA**

The elements of Plaintiff's FCRA claim include, "(1) that the defendant is a furnisher of credit information; (2) that the plaintiff notified the CRAs that the plaintiff has disputed misleading or inaccurate credit reporting; (3) that the CRAs notified the defendant of the dispute(s); (4) that the reporting was misleading or inaccurate; and (5) that the defendant failed to conduct a reasonable re-investigation of the dispute." *Hollingsworth v. Discover Bank,* 2024 U.S. Dist. LEXIS 10975, at *6 – 7 (S.D. Ala. Jan. 22, 2024) (citing *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018), report and recommendation adopted sub nom., *Hollingworth v. Discover Bank*, 2024 U.S. Dist. LEXIS 22183 (S.D. Ala. Feb. 8, 2024). Defendant moves for summary judger based on the fourth element, *i.e.*, it argues there is no material factual

---

[3] The Court denies Defendant's Motion as it relates to the subject RESPA provisions providing a private right of action, for the reasons previously addressed and stated on Defendant's Motion to Dismiss. (*See* Docs. 33, 17, 22, 26 and 32).

dispute that its reporting was misleading or inaccurate. Upon due consideration, and for the reasons stated above, the Court finds that there are material factual disputes for resolution by a jury. Defendant's Motion as to Plaintiff's FCRA claim is due to be **DENIED.**

## CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 59) is **DENIED.**

**DONE and ORDERED** this 7th day of January, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE